UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA LYNN JACOBS,

        Plaintiff,        Civil Action No.: 14-11300
                               Honorable John Corbett O'Meara
        v.                  Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]

Plaintiff Jessica Jacobs appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 13], which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the ALJ gave sufficient reasons for discounting Jacobs's credibility and that his decision finding her not disabled is supported by substantial evidence of record. For these reasons, the Court RECOMMENDS that the Commissioner's motion [13]

be granted, Jacobs's motion [11] be denied, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be affirmed.

I.   **BACKGROUND**

At the time of the administrative hearing, Jacobs was a twenty-three-year-old high school graduate who had taken an online course in criminal justice. She had previously worked as a nursing home assistant, gas station attendant and movie theater attendant, but allegedly stopped working due to her conditions. She claimed disability based on a seizure disorder, arthritis, depression and anxiety.

A.   **Procedural History**

On September 5, 2009, Jacobs filed applications for DIB and SSI, alleging disability as of August 29, 2009. (Tr. 159-165). The claims were denied initially on March 17, 2010, and Jacobs filed a timely request for an administrative hearing. (Tr. 80-91). Jacobs did not appear at her first hearing, scheduled for October 27, 2010, and an administrative law judge ("ALJ") dismissed her case. (Tr. 72-76). She appealed the dismissal, arguing that she did not receive notice of the hearing due to the fact she had been living in a crisis center, and the Appeals Council remanded the case. (Tr. 77-79). Jacobs testified at a subsequent August 14, 2012 hearing before the ALJ, as did a vocational expert, ("VE"). (Tr. 31-61). In

an October 24, 2012 written decision, the ALJ found Jacobs not disabled. (Tr. 13-30). On January 29, 2014, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purpose of this review. (Tr. 1-4). Jacobs filed for judicial review of the final decision on March 28, 2014. [1].

**B.   Evidence in the Record**

Jacobs alleged disability based on her seizures, arthritis, depression and anxiety. However, the only challenge she makes to the ALJ's decision relates to his evaluation of her seizure disorder. Although the Court has thoroughly reviewed the entire record, for purposes of this Report and Recommendation, only the evidence relevant to Jacobs's seizure disorder will be summarized.

*1.   Jacobs's Testimony and Subjective Reports*

Jacobs testified that she had between eight and ten "grand mal" seizures[1] a month. (Tr. 46). Her roommate reported that Jacobs also had smaller seizures between four and five times a week lasting three to five minutes. (Tr. 199). Jacobs testified that these "petit mal" seizures[2]

---

[1] A grand mal seizure "features a loss of consciousness and violent muscle contractions." Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/grand-mal-seizure/basics/definition/con-20021356 (last visited Feb. 17, 2015).

[2] A petit mal seizure involves "brief, sudden lapses of consciousness" and

occurred daily. (Tr. 46). Although Jacobs testified that she takes Dilantin and Topamax for her seizures, she admitted that she occasionally forgets to take her medicine, often because she sleeps for a day or two to recover after a seizure and takes her medication only upon waking. (Tr. 47-48, 51). She also testified that she had periods where she did not have access to medicine because she could not afford it, and was only informed of assistance programs at an August 2009 emergency room visit. (Tr. 51; 238). Jacobs stated that the gap in her neurology treatment was due to insurance problems. (Tr. 55-56).

    Jacobs and her roommate noted Jacobs's ability to care for her personal needs, although she tended to need help immediately after a seizure. (Tr. 201; 209). She was able to cook and clean, although her roommate performed most of the chores. (Tr. 202; 210). She engaged in no social activities, did not drive due to her seizures, and only went out to visit family or with her roommate. (Tr. 203; 211). She testified that she would leave the house once or twice a week. (Tr. 53). She also had trouble sleeping and had an irregular sleep pattern. (Tr. 200-201; 209).

    Her step-father wrote a letter stating that Jacobs' seizures have

---

"usually doesn't lead to physical injury." Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/petit-mal-seizure/basics/definition/con-20021252 (last visited Feb. 27, 2015).

4

worsened over the years and that she sometimes has one to five a day. (Tr. 230). He opined that they were caused by many things, including headlights, stress, mood swings, as well as some with no definite cause. (*Id.*).

    2.    Medical Evidence

        a.    Treating Sources

Jacobs was treated for seizures in the emergency room six times between 2007 and 2012. (Tr. 231-38; 267-77; 293-302; 303-308; 383; 399-401). The first time she reported having had three seizures in the past year, but not receiving treatment for them. (Tr. 387). At all later visits to the emergency room and at other treatment provider visits, she reported two to three seizures a month, although at times she reported having gone upwards of two months without a seizure. (Tr. 304; 343; 373; 376-78; 397). Jacob also reported having seizures for which she did not receive treatment. (Tr. 304; 373; 379-81). At the majority of these visits, Jacobs generally either admitted to not taking her Dilantin regularly, or blood tests revealed her levels were subtherapeutic. (Tr. 233; 268; 296; 304; 383). Her Dilantin dosage was increased in May 2010. (Tr. 398).

Jacobs underwent five CT scans during this period, all of which were negative. (Tr. 274-77; 301-302; 387; 388; 399-401). In April 2012, she

was examined by a neurologist who managed her medications but did not change her Dilantin dosage. (Tr. 376-78). He performed an EEG, which was normal. (Tr. 381-82).

### b. Consultative and Non-Examining Sources

Jacobs underwent a physical consultative examination on March 3, 2010. (Tr. 339-42). She reported seizures two to three times a months and headaches. (Tr. 339). An exam revealed no neurological deficits. (Tr. 340). Jacobs admitted to subtherapeutic Dilantin levels, but also believed she needed a dosage adjustment. (*Id.*). The doctor opined that Jacobs' headaches could be related to caffeine withdrawal or tension. (*Id.*).

### C. The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled. 20 C.F.R. § 1520(a)(4); 20 C.F.R. § 416.920(a)(4).[3] Second, if the claimant has not had a severe impairment or a combination of such impairments[4] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying the five-step sequential analysis, the ALJ concluded that Jacobs was not disabled. At Step One, he determined she had not engaged in substantial gainful activity since her alleged onset date. (Tr.

---

[3] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[4] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

18). At Step Two, he found the following severe impairments: "seizure disorder, headaches, obesity, depression and anxiety." (*Id.*). At Step Three, he concluded that none of Jacobs's impairments, either alone or combination, met or medically equaled a listed impairment. (Tr. 21).

Next, the ALJ assessed Jacobs's RFC, finding her capable of performing light work,

> except claimant cannot perform overhead work and cannot use foot controls. She can occasionally bend, twist, or turn but no climbing, crawling, squatting, kneeling and no working around dangerous machinery or at unprotected heights. She can only have occasional contact with coworkers and no contact with the general public. The claimant is limited to simple, repetitive work with an SVP of 1 or 2.

(Tr. 22). In making this determination, the ALJ found Jacobs' testimony regarding the severity of her seizure disorder to be less than credible because it was inconsistent with objective evidence of record, and because she did not consistently take her medications as directed. (Tr. 22-24).

At Step Four, the ALJ concluded that, based on the foregoing RFC, Jacobs was unable to return to her past relevant work. (Tr. 24). He concluded at Step Five that, in view of the testimony of the VE, there were a significant number of jobs in the national economy that Jacobs could still perform, including general office clerk (8,000 jobs in region), collator operator (5,000 jobs) and sorter folder (3,000 jobs). (Tr. 25; 59). The VE

also testified that, if Jacobs were limited to sedentary work, she could still perform the jobs of cashier II (6,000 jobs), addressor (3,000 jobs) and ticket checker (5,000 jobs). (Tr. 25; 60). All of the cited jobs could accommodate a sit/stand option if necessary, according to the VE. (Tr. 25; 59-60). The VE also testified that if Jacobs were found fully credible, she would be precluded from gainful employment due to the frequency of her seizures and the recovery period in between. (Tr. 61). Based in part on the VE's testimony, the ALJ concluded that Jacobs was not disabled under the Act. (Tr. 25).

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v.*

*McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

Similarly, although credibility determinations of witnesses are within the province of the ALJ and not the reviewing court, "such determinations must find support in the record." *Rogers*, 486 F.3d at 247. An ALJ must sufficiently explain the bases of credibility determinations. "[B]lanket

10

assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.* at 248.

With these standards in mind, this Court finds that the ALJ's determination that Jacobs is not disabled is supported by substantial evidence.

### III. ANALYSIS

The only argument Jacobs raises is that the ALJ erred in his evaluation of her credibility related to her seizure disorder. It would be a stretch to say she adequately develops this argument. To the contrary, Jacobs' argument relies almost entirely on her recitation of the applicable legal standards, during which she emphasizes that "consistency of the various pieces of the information contained in the record should be scrutinized." [11, Pg ID 459-463]. Jacobs application of the legal authority to the facts of her case is captured within a single sentence; she states that her medical record is "replete with complaints *consistently* corroborating her physicians [sic] findings with regard to her seizure disorder" without citing to any supporting evidence in the record. [Id. at 461 (emphasis in original)].

Jacobs is mistaken if she believes that it is the Court's job to

11

scrutinize the record for inconsistencies. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotations omitted). So, Jacobs has waived the argument that the ALJ's credibility determination was not supported by the record.

Furthermore, her argument is without merit, because the ALJ's credibility determination finds support in the record. The ALJ found that Jacobs' subjective reports of eight grand mal seizures a month and daily petit mal seizures did not comport to the subjective reports she gave to other treatment providers, including her neurologist and the consulting examiner. (Tr. 23). The record evidence shows that Jacobs reported to every provider she treated or consulted with at most two to three grand mal seizures and eight petit mal seizures a month. (Tr. 184; 196; 304; 339; 343; 376).

The ALJ further relied upon evidence that Jacobs' Dilantin levels were subtherapeutic when they were checked during 2009 and 2010 emergency room visits and her admission to not always taking her

12

medication. (Tr. 23; 233; 296; 340). Consideration of subtherapeutic levels of seizure medication for disability determinations is proper. *See* 20 C.F.R. §§ 404.1530; 416.930 (providing that a person will not be found disabled if she fails to follow prescribed treatment without "good reason" as defined by those sections); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Finally, the ALJ cited Jacobs' minimal treatment for her seizures until April 2012, when she began treating with the neurologist, and the fact that her subsequent EEG scan was normal. (Tr. 23, 381-382). Consistent with the ALJ's findings, there are no medical records for the one-and-a-half year period between November 2010 and April 2012 related to Jacobs's seizures.

In all, the Court finds that the ALJ gave sufficient reasons supported by substantial evidence in the record for discounting Jacobs's subjective statements regarding her condition. As a result, the Court finds no reason to disturb the ALJ's credibility determination, or his conclusion that Jacobs is not disabled under the Act.

### IV.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Jacobs's Motion for Summary Judgment **[11]** be **DENIED**, the Commissioner's Motion **[13]** be **GRANTED** and this case be **AFFIRMED**.

>s/Elizabeth A. Stafford
>ELIZABETH A. STAFFORD
>United States Magistrate Judge

Dated: March 23, 2015

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to

14

the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 23, 2015.

                                              s/Marlena Williams
                                              MARLENA WILLIAMS
                                              Case Manager